IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KELLY DAY, <br><br> Plaintiff, <br><br> v. <br><br> SKYWEST AIRLINES, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS** <br><br> Case No. 4:20-cv-00013-DN-PK <br><br> District Judge David Nuffer |

Plaintiff Kelly Day ("Day") asserts claims against Defendant SkyWest Airlines, Inc. ("SkyWest") for negligence and breach of contract arising from alleged injuries she sustained during the beverage service of a SkyWest flight.[1] SkyWest argues Day's claims must be dismissed because they are preempted by the Federal Aviation Act ("FAA") and the Airline Deregulation Act ("AirDA").[2] Because Day's claims are preempted by the AirDA, SkyWest's Motion[3] is GRANTED.

**Contents**
BACKGROUND ............................................................................................................................ 2
DISCUSSION ................................................................................................................................ 2
    Because Day's claims against SkyWest relate to the services of an air carrier, they are
        expressly preempted by the AirDA ..................................................................... 3
ORDER ........................................................................................................................................ 10

---

[1] Complaint & Jury Demand ("Complaint") ¶¶ 10-25 at 3-6, docket no. 2, filed Feb. 18, 2020.

[2] Motion to Dismiss ("Motion"), docket no. 11, filed Apr. 30, 2020.

[3] *Id*.

## BACKGROUND

On January 11, 2019, Day was a passenger aboard a SkyWest flight originating in Portland, Oregon, and ending in Dallas Fort Worth, Texas.[4] During the flight's beverage service, the beverage cart forcefully struck Day's right shoulder, causing her significant injury.[5] Day subsequently initiated this case on February 18, 2020, asserting claims against SkyWest for negligence and breach of contract to recover damages for her economic losses, emotional trauma, physical pain and suffering, and medical expenses.[6]

## DISCUSSION

SkyWest seeks dismissal of Day's Complaint for failure to state a claim under FED. R. CIV. P. 12(b)(6).[7] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] "[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[9] "To achieve 'facial plausibility,' a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[10]

However, even if a plaintiff pleads sufficient factual content regarding a claim's elements, "a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim."[11] "If the defense appears plainly on the face of the complaint itself, the motion

---

[4] Complaint ¶ 6 at 2.

[5] *Id*. ¶ 7 at 2.

[6] *Id*. ¶¶ 10-25 at 3-6.

[7] Motion at 1-3.

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[9] *Twombly*, 550 U.S. at 555.

[10] *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

[11] *Miller v. Shell Oil Co.,* 345 F.2d 891, 893 (10th Cir. 1965).

may be disposed of under [Rule 12(b)(6)]."[12] SkyWest argues that Day's claims should be dismissed based on the affirmative defense of preemption.[13] "Dismissal is appropriate . . . 'on the basis of an affirmative defense like preemption when the law compels that result.'"[14]

Under the Supremacy Clause of the United States Constitution,[15] "Congress has the power to enact statutes that preempt state law."[16] "[P]re-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose."[17] "The question, at bottom, is one of statutory intent, and [courts] begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."[18]

### Because Day's claims against SkyWest relate to the services of an air carrier, they are expressly preempted by the AirDA

Day asserts state common law claims against SkyWest for negligence and breach of contract arising from alleged injuries she sustained during the beverage service of a SkyWest flight.[19] Specifically, Day alleges that SkyWest owed her a duty of reasonable care in the performance of services aboard the flight, including: "safe management, handling, proper flight

---

[12] *Id*.

[13] Motion at 3-9. SkyWest also argues that Day's breach of contract claim also fails because it is redundant to Day's negligence claim and does not identify a specific contractual provision that SkyWest allegedly breached. *Id*. at 5-9. Because the breach of contract claim is preempted by the FAA and AirDA, *supra* Discussion at 3-10, it is unnecessary to address these arguments. Nevertheless, SkyWest is correct that the factual allegations of Day's Complaint are insufficient to state a claim for breach of contract.

[14] *Schenberger v. Air Evac Ems, Inc.*, 749 Fed. App'x 670, 676 (quoting *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015)).

[15] U.S. Const. art VI, cl. 2.

[16] *US Airways, Inc., v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010).

[17] *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383 (1992) (internal quotations omitted).

[18] *Id*. (internal quotations omitted).

[19] Complaint ¶¶ 10-25 at 3-6.

attendant training, and supervision of the beverage service and safe and vigilant movement of the beverage cart through the aircraft's seating aisle."[20] Day further alleges that SkyWest owed her a contractual duty to "exercise professional, careful, and safe conduct and judgment" during the flight's beverage service.[21] And Day alleges that SkyWest "failed to provide a safe flight" and "breached its contractual obligations" in the following respects:

    a. Failing to maintain proper lookout during the beverage service;

    b. Failing to push the beverage cart at a reasonable rate of speed;

    c. Failing to instruct and train flight attendants how to perform their duties during the beverage service in a safe manner;

    d. Failing to properly announce and warn passengers that the beverage cart would be or was being pushed through the passenger aisle;

    e. Failing to properly react to, treat, and handle an instance where a passenger is struck with the beverage cart to minimize injury;

    f. Failing to provide sufficient light in the cabin to enable flight attendants to carrying out their duties during the beverage service;

    g. Failing to provide appropriate attention, seating location, care, and outlook to passengers; and

    h. Failing to provide appropriate training to flight attendants to account for the deficiencies in (a) through (g) above.[22]

The allegations of Day's claims against SkyWest implicate preemption under the FAA and the AirDA.

"Congress enacted the FAA in response to a series of 'fatal air crashes between civil and military aircraft operating under separate flight rules."[23] "The language of the FAA explicitly

---

[20] *Id.* ¶ 12 at 3.

[21] *Id.* ¶ 22 at 5.

[22] *Id.* ¶¶ 14 at 4, 23 at 5-6.

[23] *O'Donnell*, 627 F.3d at 1326 (quoting H.R.Rep. No. 85-2360, at 2 (1958), reprinted in 1958 U.S.C.C.A.N. 3741, 3742).

directs the Administrator of the Federal Aviation Administration to promulgate regulations for the 'safe flight of civil aircraft in air commerce."[24] "Beyond the types of regulations specially enumerated, the FAA directs the Administrator to regulate any 'other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security.'"[25] "The Federal Aviation Administration has exercised its authority pursuant to the FAA to promulgate regulations addressing 'virtually all areas of air safety.'"[26] Included among these areas, and relevant to this case, "federal law extensively regulates flight attendant and crew member training programs and certification requirements due to the aviation safety considerations involved."[27] Thus, the FAA "create[s] a 'uniform and exclusive system of federal regulation' in the field of air safety."[28]

Additionally, in 1978, Congress amended the FAA through the enactment of the AirDA.[29] Congress "determine[d] that 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality . . . of air transportation services.'"[30] And "[t]o ensure that the States would not undo federal deregulation with regulation of their own, the AirDA included a[n express] pre-emption provision[.]"[31] The AirDA's preemption clause provides that "a State . . . may not enact or enforce a law, regulation,

---

[24] *Id*. (quoting 49 U.S.C. 44701(a)).

[25] *Id*. at 1326-1327 (quoting 49 U.S.C. 44701(a)).

[26] *Id*. at 1327 (quoting *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224 (2d Cir. 2008).

[27] *Id*. (citing 49 U.S.C. § 44728(a)(1); 14 C.F.R. §§ 121.404, 121.405, 121.415, 121.421, 121.427, 121.433).

[28] *Id*. (quoting *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 639 (1973)). The Tenth Circuit Court of Appeals has held that based on the FAA's purpose and structure, state actions that implicate the field of airline safety are impliedly preempted by the FAA. *Id*. at 1329. The parties' briefing refers to preemption under the FAA, but only in passing. Because the parties' briefing of the issue is insufficient, implied preemption of Day's claims under the FAA will not be addressed.

[29] Pub.L. 95-504, 92 Stat. 1705 (Oct. 24, 1979).

[30] *Morales,* 504 U.S. at 378 (quoting 49 U.S.C. app. §§ 1302(a)(4), 1302(a)(9)).

[31] *Id*. at 378-379.

or other provision having the force and effect of law related to a price, route, or service of an air carrier[.]"[32]

In interpreting the AirDA's preemption clause, the Supreme Court has held that "the ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'"[33] "[T]he words thus express a broad preemptive purpose."[34] Therefore, "State enforcement actions having a connection with or reference to airline [prices], routes, or services are pre-empted under [the AirDA]."[35]

The Supreme Court has also held that the AirDA preemption clause's "phrase 'other provision having the force and effect of law' includes common-law claims."[36] And, like similarly worded federal preemption clauses, the AirDA's preemption clause will apply "even if the [state] law is not specifically designed to affect [prices, routes, or services], or the effect is only indirect."[37] But the Supreme Court recognized that "[s]ome state actions may affect [prices, routes, or services] in too tenuous, remote, or peripheral a manner to have pre-emptive effect."[38]

There is no dispute that SkyWest is an air carrier under the AirDA. Therefore, whether Day's claims are preempted by the AirDA turns on whether they "relate to" a "service" of

---

[32] 49 U.S.C. § 41713(b)(1).

[33] *Morales,* 504 U.S. at 383 (quoting Black's Law Dictionary 1158 (5th ed. 1979)). While *Morales* dealt with state deceptive advertising laws, the opinion includes discussion that applies to state common law and tort claims. It likens AirDA preemption to preemption under the Employee Retirement Income Security Act of 1974 ("ERISA") because "the relevant language of the [two statutes] is identical." *Id*. at 384. And in doing so, recognizes that ERISA preempts "all state law that fall within its sphere," including common law contract and tort claims, even if the state laws "are consistent with ERISA's substantive requirements." *Id*. at 386-387 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987); *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829 (1988)).

[34] *Id*.

[35] *Id*. at 384 (internal quotations omitted).

[36] *Northwest, Inc. v. Ginsberg,* 572 U.S. 273, 284 (2014).

[37] *Morales,* 504 U.S. at 386 (internal quotations omitted).

[38] *Id*. at 390 (internal quotations omitted).

6

SkyWest. "Service" is not a defined term in the AirDA, and the Supreme Court has not explicitly defined the term. The Supreme Court has, however, broadly applied the term to preempt state common law claims and state regulations.

In *Northwest, Inc. v. Ginsberg*, the plaintiff brought a state common law claim for breach of the implied covenant of good faith and fair dealing regarding an airline carrier's termination of a frequent flyer program.[39] The Supreme Court recognized that "state common-law rules fall comfortably within the language of the A[ir]DA pre-emption provision."[40] The Supreme Court then held that the plaintiff's state common law claim was preempted by the AirDA because the frequent flyer program was "connected to [the airline's] 'services,' *i.e.*, access to flights and to higher service categories."[41] And in *Rowe v. New Hampshire Motor Trans. Ass'n*, the Supreme Court held that several state statutes which set procedures for transporting tobacco products were preempted by the AirDA: "[T]he effect of the regulation[s are] that carriers will have to offer tobacco delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate."[42] In so holding, the Supreme Court rejected the argument that Congress intended only to preempt state "economic" regulations: "[I]t is not surprising that Congress declined to insert the term 'economic' into the operative language [of the preemption clause], despite having at one time considered doing so."[43]

The Tenth Circuit Court of Appeals has not defined "service" for purposes of the AirDA's preemption clause. But it has recognized the broad preemptive purpose of the AirDA's

---

[39] *Ginsberg*, 572 U.S. at 278.

[40] *Id*. at 281.

[41] *Id*. at 284.

[42] 552 U.S. 364, 372 (2008).

[43] *Id*. at 374 (citing S.Rep. No. 95-631, p.171 (1978)).

preemption clause and has cited favorably to the definition adopted by the Fifth Circuit Court of Appeals.[44] The Fifth Circuit defines "service" as:

> 'Services' generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, *provision of food and drink*, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as 'services' and broadly to protect from state regulation.[45]

Additionally, District Judge Jill N. Parrish in the District Court of Utah applied this definition to conclude that a plaintiff's state tort claims for intentional and negligent infliction of emotional distress, negligence, false imprisonment, and assault were preempted by the AirDA.[46] Judge Parrish determined that the claims' allegations regarding the flight crew's handling of disputes between passengers and maintaining order in the cabin to provide a safe and tranquil flight related to the air carrier's "services."[47]

Despite this authority, Day urges adoption of a narrower definition of "service" from the Ninth Circuit Court of Appeals:

> Congress used the word 'service' in the . . . A[ir]DA's preemption clause to refer to the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail. In the context in which it was used in the Act, 'service' was not intended to include an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities.[48]

---

[44] *Arapahoe Cty. Pub. Airport Auth. v. F.A.A.*, 242 F.3d 1213, 1221-1222 (10th Cir. 2001) (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)).

[45] *Hodges*, 44 F.3d at 336 (emphasis added).

[46] *Gardner v. United States*, No. 1:14-cv-00125-JNP-DBP, 316 F. Supp. 3d 1308, 1318 (D. Utah 2018) (citing *Arapahoe Cty. Pub. Airport Auth.*, 242 F.3d at 1222).

[47] *Id*.

[48] *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1261 (9th Cir. 1998).

The Ninth Circuit reached this definition by placing emphasis on the AirDA's purpose of economic deregulation and its determination that "[n]othing in the [AirDA], or its legislative history, indicates that Congress had a 'clear and manifest purpose' to displace state tort law."[49] However, this definition predates the Supreme Court's rejection of the argument in *Rowe* that Congress intended only to preempt state "economic" regulations.[50] And it predates the Tenth Circuit's favorable citation to the broader Fifth Circuit definition.[51] Therefore, the Ninth Circuit definition is not persuasive.

The broad preemptive purpose of the AirDA's preemption clause,[52] the Tenth Circuit's favorable citation to the Fifth Circuit's definition of "service,"[53] and Judge Parrish's application of the Fifth Circuit's definition[54] are persuasive for the application of the Fifth Circuit's definition of "service" in this case. Under this definition, Day's claims unquestionably relate to a "service" of SkyWest for purposes of preemption.

Day specifically alleges that SkyWest is in the business of providing a beverage service as part of its operations as an air carrier,[55] and that performance of the beverage service is part of the bargained for contractual responsibilities of SkyWest.[56] Day's allegations are directly connected to how SkyWest trains its flight attendants and conducts the provision of beverages to its passengers.[57] Day's claims do not merely affect SkyWest's "service" in a "tenuous, remote,

---

[49] *Id*. at 1265.

[50] *Rowe,* 552 U.S. at 374.

[51] *Arapahoe Cty. Pub. Airport Auth.*, 242 F.3d at 1222.

[52] *Morales,* 504 U.S. at 383.

[53] *Arapahoe Cty. Pub. Airport Auth.*, 242 F.3d at 1222.

[54] *Gardner*, 316 F. Supp. 3d at 1318.

[55] Complaint ¶ 11 at 3.

[56] *Id*. ¶ 22 at 5.

[57] *Id*. ¶¶ 14 at 4, 23 at 5-6.

or peripheral manner."⁵⁸ Rather, the claims expressly seek determination and regulation of how SkyWest should properly perform its "service."⁵⁹ Permitting Day's claims would undermine the AirDA's regulatory aim and "significantly impact" Congress's objectives of "'efficiency, innovation, and low prices' as well as 'variety and quality… of services.'"⁶⁰ Therefore, Day's claims are expressly preempted by the AirDA.

## ORDER

IT IS HEREBY ORDERED that SkyWest's Motion⁶¹ is GRANTED. Day's Complaint⁶² against SkyWest is DISMISSED without prejudice.

Signed November 24, 2020.

BY THE COURT

_____
David Nuffer
United States District Judge

---

⁵⁸ *Morales,* 504 U.S. at 390.

⁵⁹ *Id.*

⁶⁰ *Id*. at 378 (quoting 49 U.S.C. app. §§ 1302(a)(4), 1302(a)(9)).

⁶¹ Docket no. 11, filed Apr. 30, 2020.

⁶² Docket no. 2, filed Feb. 18, 2020.